MURDOCK, Justice
(concurring specially).
I concur in affirming the trial court’s judgment. I write separately to explain my reasons for doing so in the face of the contrary views expressed in the special writings of Justice Parker and Justice Shaw.
Liability under Title IX and § 1983 for supervisory state officials not directly involved in discriminatory conduct cannot be based upon rumors or mere “notice” that might be said to warrant a further investigation. It must be based upon “actual knowledge” of a statutory or constitutional violation that compels the supervisor to act to correct the violation. In this case, the trial court appears to have correctly concluded that the facts in this case do not meet the “extremely rigorous” supervisor-liability standards applicable under Title IX and § 1983. Nor were the decisions of the supervisors in this case as to when to investigate and when not to investigate “beyond their authority” for purposes of State-agent immunity under Alabama law.
Before January 2004, the only “notice” Larry Turner, the principal, and Dennis L. Mixon, the school superintendent, had regarding the possibility of misconduct involving Willie White, Jr., and L.N. was provided by N.C. and her mother, G.C., who in early 2003 merely repeated what they had heard in this regard. Turner and Mixon apparently did not put much “stock” in N.C.’s and G.C.’s accusations of a “sexual affair” between White and L.N. and apparently decided not to initiate an investigation at that time.[1]
In January 2004, however, L.N.’s stepfather, K.M., met with Turner and told Turner that he and L.N.’s mother recently had heard a “rumor” that White and L.N. were sexually involved. K.M. indicated to Turner, however, that he did not believe the rumor. Mixon testified that Turner re *467 ported the meeting with K.M. to him but that he told Mixon that KM. and P.M., L.N.’s mother, did not believe the rumor and instead believed that it had been started by girls who did not like L.N.
Nonetheless, Turner investigated the rumor, talking with L.N., White, and Sandra Lambert, one of L.N.’s teachers with whom N.C. had had conflicts.[2] All three denied the rumor was true. Nonetheless, Turner also instructed L.N. not to go into White’s office for any reason.
Later, in August 2004, in response to a police incident report stating that White and L.N. had been seen together outside school, a further investigation was made and White was dismissed from the employment of the Monroe County Board of Education.
I. Title IX
Justice Parker’s special writing quotes and relies upon the following synthesis of Gebser v. Lago Vista Independent School District, 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), and two of its progeny by the United States Court of Appeals for the Eleventh Circuit in Doe v. School Board of Broward County, Fla., 604 F.3d 1248, 1254 (11th Cir.2010):
“ ‘[Ajpplying the Gebser [v. Lago Vista Independent School District, 524 U.S. 274 (1998),] framework to the summary judgment context requires three related inquiries. First, the plaintiff must be able to identify an “appropriate person” under Title IX, i.e., a school district official with the authority to take corrective measures in response to actual notice of sexual harassment. See Floyd v. Waiters, 171 F.3d 1264, 1264 (11th Cir.1999). Second, the substance of that actual notice must be sufficient to alert the school official of the possibility of the Title IX plaintiff’s harassment. See Gebser, 524 U.S. at 291, 118 S.Ct. at 2000. And finally, the official with such notice must exhibit deliberate indifference to the harassment. See Sauls [ v. Pierce County Sch. Dist], 399 F.3d [1279,] 1281 [ (11th Cir.2005) ].’ ”
141 So.3d at 477 (emphasis added). The special writing makes note of the 2003 accusation made by N.C. and her mother, G.C., that was not acted upon by Turner or Mixon and argues that this accusation amounted to the “notice” contemplated by the second of the Gebser elements and that the failure of Turner and Mixon to act upon the accusation constituted “deliberate indifference to the harassment.” My disagreement with this argument lies in the fact (1) that the requirement announced in Gebser is not merely one of “notice” sufficient to warrant some further investigation, and (2) that a failure simply to conduct such a further investigation, as occurred here in 2003, does not amount to the “deliberate indifference to discrimination” contemplated by Gebser.
Gebser is the opinion in which the Supreme Court crafted the standard that the Eleventh Circuit was merely attempting to summarize in Doe. As accurately “applied,” if not quoted by the trial court in this case,[3] the Supreme Court in Gebser announced a requirement not of mere “notice” sufficient to trigger a further investi *468 gation, but of “actual knowledge” of a Title IX violation:
“[W]e hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient’s behalf has actual knowledge of discrimination in the recipient’s programs and fails adequately to respond.”
524 U.S. at 290 (emphasis added). Furthermore, the Supreme Court goes on to explain the “exacting standard” applicable to Title IX claims based on this “actual knowledge” requirement:
“We think, moreover, that the response must amount to deliberate indifference to discrimination. The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation.”
Id. (emphasis added).
The trial court in this case was fully correct in its conclusion that there was not substantial evidence that Turner and Mix-on had “actual knowledge” of White’s inappropriate behavior with L.N. or that, based on such actual knowledge, they were “deliberately indifferent” to it. In keeping with the wording of the standard announced at the end of the above-quoted passage, the trial court here was correct in determining that the record provides no meaningful support for the notion that Turner and Mixon made “an official decision ... not to remedy [a known] violation.” 524 U.S. at 290.
Based on the “exacting standard” set by the Supreme Court itself in Gebser, I must conclude that the trial court correctly entered a summary judgment as to the Title IX claims, and I therefore concur in the affirmance of that judgment.
II. State-agent Immunity
I remain of the view that, in recent years, this Court has “ballooned” the “beyond authority” exception to State-agent immunity identified in Ex parte Cranman, 792 So.2d 392 (Ala.2000), and Ex parte Butts, 775 So.2d 173, 178 (Ala.2000), into something that threatens to, and that taken to its logical conclusion does, swallow the rule of State-agent immunity also identified in those cases. By this reference, I incorporate herein the position I expressed as to this issue in Ex parte Watson, 37 So.3d 752, 765-66 (Ala.2009) (Murdock, J., concurring in part and dissenting in part). Furthermore, I also incorporate by this reference the analysis provided by the United States Court of Appeals for the Eleventh Circuit in Holloman v. Harland, 370 F.3d 1252 (11th Cir.2004), a case I have only recently noticed, but one that perhaps offers a more erudite explanation than have I thus far as to what that court would call the “untenable tautology” created by a “beyond authority” exception to immunity that has been “framed” by this Court.
Specifically, my understanding of the purpose and nature of the “beyond authority” exception in Alabama law finds a parallel in the federal law’s inquiry into whether a state official is entitled to “qualified immunity” from certain federal-law claims. In Holloman, the Eleventh Circuit explained how it is that a state official might be considered to be acting within his or her authority, even in the course of violating the constitution, which of course the official ultimately is not authorized to do. Substitute a concern for whether a teacher or state official can ever be said to act within his or her authority when violating a handbook or other instructions, which the teacher or official is not author *469 ized to do, and the analysis in Holloman parallels and validates the understanding I attempted to express in Ex parte Watson.
As was true of the defendant in Hollo-man, Turner and Mixon engaged in a “legitimate job-related function” (or a “job-related goal”) and did so “through means that were within [their] power to utilize.” 370 F.3d at 1265. It is undisputed that they were pursuing the general, job-related goal of supervising the high school and maintaining a safe environment for students. In the course of pursing this general function, they exercised “powers” within their arsenal, including the power and responsibility to evaluate information that might be relayed to them and to exercise their judgment as to what weight to assign that information and whether it warranted further investigation at the time. I cannot conclude in this case that Turner and Mixon engaged in actions “beyond their authority” within a properly understood meaning of that exception to State-agent immunity.

. According to N.C.'s deposition testimony, White made an inappropriate comment to her in 2001 when he walked into the girl’s locker room while N.C. had her shirt "halfway off.” N.C. reported the incident to the girls basketball coach, who told N.C. she would report it to Turner, but it is unclear if she actually did so. N.C. testified that she later quit the basketball team because White was "coming on to her” and that she told Turner the reason she had quit.

. N.C. was at one point expelled from school because of "problems” with another teacher stemming from an altercation between N.C. and other students.

. The special writing quotes an apparently incorrect quotation of Gebser by the trial court in which the trial court changed the Gebser Court’s reference to "actual knowledge” to a reference to "actual notice.” 141 So.3d at 473 (quoting the trial court’s opinion). The Gebser Court also invokes the term "actual notice” throughout its opinion, clearly considering it to mean "actual knowledge” for purposes of that case.